**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4541-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EMMA PRESTON,

    Defendant-Appellant.

_____

Submitted May 22, 2018 — Decided July 16, 2018

Before Judges Mawla and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6194.

Richard J. Kaplow attorney for appellant.

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Izabella M. Wozniak, Special Deputy Attorney General/ Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Emma Preston appeals from an order of the Law Division denying a motion to vacate her guilty plea to two motor vehicle offenses. We affirm.

I.

On July 12, 2012, defendant was operating a motor vehicle while intoxicated in Westfield. She lost control of the car and struck a tree. Officer Kevin J. O'Keefe was dispatched to the scene where he observed a contusion on defendant's forearm and a small laceration to her eyelid. Defendant declined medical treatment. While speaking with defendant, Officer O'Keefe detected a strong odor of alcohol emanating from her, and noticed other indicia of intoxication. Defendant failed a field sobriety test. Her blood alcohol level tested above the legal limit.

While investigating the accident, Office O'Keefe spoke with defendant's passenger, Christopher Weber. The officer detected a strong odor of alcohol emanating from Weber, who admitted he had been drinking. Although an emergency medical technician was on scene, Weber denied medical treatment and left on his own accord.

On July 12, 2012, defendant was issued summonses charging her with careless driving, N.J.S.A. 39:4-97, and driving while intoxicated (DWI), N.J.S.A. 39:4-50. On October 18, 2012, defendant appeared in the Fanwood Municipal Court, where the matter had been transferred because the judge in Westfield had previously

represented Weber in a civil matter.  Pursuant to a negotiated plea agreement, defendant pled guilty to both offenses.  Prior to the plea allocution, defendant's attorney had the following exchange with the court:

> THE COURT:     Was Mr. Weber injured in the incident?
>
> MR. KAPLOW:    I don't know.  He went out and hired —
>
> THE COURT:     Do you know the attorney of record?
>
> MR. KAPLOW:    He went out and hired a lawyer and I believe that there's a claim that he's injured.  I don't know the extent of his injuries is (sic) really --

Defendant's attorney also stated, "[t]hank goodness . . . that there doesn't appear to be any serious injury . . . from what I know."  The judge advised defendant that had Weber suffered serious bodily injuries she would be in Superior Court facing criminal charges.[1]

In her plea allocution, defendant admitted that she began drinking alcohol approximately an hour and a half before the crash, consuming almost an entire bottle of wine.  She admitted to driving

---

[1] Defendant's counsel argues that at the 2012 municipal court proceedings he gave the court a June 2, 2016 letter from an attorney stating that he represented Weber with respect to serious bodily injuries incurred in the accident.  However, the letter is dated almost four years after defendant's guilty plea.

carelessly while intoxicated and driving her car into a tree. The court suspended defendant's driving privileges for three months, imposed mandatory fines and penalties, and ordered her to complete twelve hours at the Intoxicated Driver Resource Center.

On July 30, 2015, defendant incurred a second DWI conviction.

On March 24, 2016, a grand jury indicted defendant on charges unrelated to the July 12, 2012 accident. She was charged with fourth-degree driving while suspended for a second DWI conviction, N.J.S.A. 2C:40-26(b), and third-degree assault by auto, N.J.S.A. 2C:12-1(c)(3)(a). Defendant also received a summons for DWI, N.J.S.A. 39:4-50. Those charges are pending.

On January 1, 2017, a grand jury indicted defendant on charges unrelated to the July 12, 2012 accident. Defendant was charged with fourth-degree driving while suspended for a second DWI conviction, N.J.S.A. 2C:40-26(b), third-degree representing self as another, N.J.S.A. 2C:21-17(a)(4), and fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a). Defendant was also issued a disorderly person complaint charging her with hindering apprehension or prosecution by giving false information, N.J.S.A. 2C:29-3(b)(4). Those charges are pending.

On March 2, 2017, defendant appeared in municipal court on a motion to vacate her 2012 guilty plea. The validity of the 2012 conviction may be relevant to defendant's pending charges for

driving while suspended for a second DWI conviction, N.J.S.A. 2C:40-26(b), and will determine whether the 2016 DWI charge, if proven, will be defendant's second or third DWI conviction.

Defendant argued that the municipal court lacked jurisdiction to accept her guilty plea due to N.J.S.A. 2B:12-17.2(a). That statute provides

> [i]n any matter concerning Title 39 of the Revised Statutes where death or serious bodily injury has occurred, regardless of whether the death or serious bodily injury is an element of the offense or violation, the Superior Court shall have exclusive jurisdiction over the offense or violation until such time that the Superior Court transfers the matter to the municipal court.
>
> [N.J.S.A. 2B:12-17.2(a).]

Defendant argued that Weber was seriously injured in the July 12, 2012 accident, and that the matter was never transferred to the Superior Court pursuant to N.J.S.A. 2B:12-17.2(a).

In support of her motion, defendant produced medical records indicating that Weber went to a hospital emergency room on August 24, 2012, approximately six weeks after the accident, complaining of abdominal pain. According to the records, Weber reported that the pain began two to three weeks earlier, but that he believed the symptoms "may be related" to the accident. The records indicate that the "mechanism of injury" to Weber is "unknown." A CAT scan administered that day revealed a subcapsular hematoma on

Weber's spleen, requiring an immediate splenectomy. Postoperative examination records indicate that Weber told his physician "that he had a CAT scan at some point after the accident and that it was negative." No medical provider causally related Weber's spleen laceration to the July 12, 2012 accident.[2]

The State opposed defendant's motion, arguing that at the time of the accident there was no indication that defendant or Weber sustained serious bodily injury. Thus, there was no reason for the Westfield police to refer the matter to the prosecutor's office for investigation. In addition, the State argued that because defendant was never charged with an indictable offense, the Superior Court never had jurisdiction over this matter. The State also argued that the purpose of N.J.S.A. 2B:12-17.2(a) is to prevent a defendant from avoiding prosecution on criminal charges arising from a motor vehicle accident by first resolving related Title 39 violations in municipal court and triggering double jeopardy protections. The State argued the statute's purpose is not contravened because defendant was never charged

---

[2] Notably, the records indicate that Weber twice denied a history of alcohol use. This contradicts his admission at the scene of the accident that he had consumed alcohol, calling into question the veracity of his statements to medical personnel. Defendant's brief states that she produced the medical records to the municipal court in 2012. This appears to be a typographical error, as the transcript of the 2012 plea allocution does not reference Weber's medical records, which were presented to the court in 2017.

with an indictable offense, and no such charges were or are contemplated.

The municipal court denied defendant's motion. The court found that the medical records do not prove that Weber suffered serious bodily injury in the accident. To reach this conclusion, the court relied on the six-week gap between the accident and Weber's emergency room treatment, the record notation that Weber had a CAT scan after the accident that was negative, and the inability to take testimony from Weber, who died before the hearing from causes unrelated to the accident. In addition, the municipal court judge agreed that N.J.S.A. 2B:12-17.2(a) is intended to prevent a defendant from avoiding criminal prosecution for injuries caused by a motor vehicle accident by resolving Title 39 charges in municipal court before resolution of criminal charges in Superior Court, circumstances not present here.

Defendant appealed to the Law Division, where on June 9, 2017, Judge John M. Deitch issued a comprehensive written opinion rejecting her claims. The trial court treated defendant's motion as an application for post-conviction relief pursuant to Rule 3:22-2(b) and Rule 7:10-2(c)(2). The court determined that she did not establish that she was entitled to an evidentiary hearing.

Finding the statute ambiguous with respect to whether the Superior Court obtains jurisdiction in the circumstances presented

here, the trial court examined the statute's legislative history to discern its intent. The court noted that N.J.S.A. 2B:12-17.2(a) was enacted in response to the holding in State v. Dively, 92 N.J. 573 (1983), and the facts that gave rise to In re Seelig, 180 N.J 234 (2004). In Dively, the defendant was driving while intoxicated when his careless driving resulted in the death of another driver. 92 N.J. at 576. He was issued five municipal court summonses, including one for DWI. When the municipal court proceedings commenced, the parties and the court were aware of the death resulting from the accident. Ibid. The defendant entered a guilty plea to DWI, and other Title 39 violations. Id. at 576-77. A grand jury later indicted the defendant for causing death by auto, N.J.S.A. 2A:113-9 (repealed), based on the same accident that was the subject of the municipal court summonses. Id. at 577.

Although the defendant entered a guilty plea to the criminal charge in Superior Court, the next day, the United States Supreme Court issued its decision in Illinois v. Vitale, 447 U.S. 410 (1980). In that case, Vitale carelessly drove his car and struck two children who died from their injuries. Id. at 411. After the driver was convicted of a traffic offense related to the accident, he was indicted for involuntary manslaughter for the death of the two children. Id. at 412-13. Ultimately, the Supreme Court held that if the prosecution of Vitale on the criminal charges required

A-4541-16T3

the same proofs that were necessary to establish the motor vehicle violation, Vitale's prosecution on the criminal charges would be barred by the Double Jeopardy Clause of the United States Constitution.  Id. at 421.  The matter was remanded for a determination of whether Illinois could prove involuntary manslaughter without proving the facts supporting the motor vehicle offense of which Vitale was convicted.  Ibid.

Believing that the decision in Vitale barred his conviction on the death by auto charge on double jeopardy grounds, the defendant in Dively moved to withdraw his guilty plea.  Dively, 92 N.J. at 577.  The prosecutor conceded that the same evidence that would have been offered to prove the municipal court charges would be necessary to prove the criminal charge against the defendant.  The Superior Court permitted the defendant to enter a guilty plea conditioned on his right to raise the double jeopardy argument, which the trial court denied, on appeal.  Ibid.

Our Supreme Court held that the motor vehicle violations of which Dively was convicted and the criminal offense for which he was indicted were based on the same facts.  Thus, the Court concluded, in order to prove the criminal charge the State would rely on the same evidence and alleged acts that underlie the motor vehicle offenses, triggering double jeopardy protections.  Id. at

582-83. In order to prevent this situation from arising in the future, the Court reiterated its prior directive that

> where a complaint is filed in the municipal court and the magistrate has reason to believe that the factual situation out of which the complaint arose may also involve an indictable offense, the matter should be referred to the county prosecutor.
>
> [Id. at 589-90.]

In addition, the Court issued a "directive to all municipal court judges to withhold actions on drunk driving incidents involving personal injuries until clearance to proceed has been obtained from the county prosecutor." Id. at 590. This was followed by a May 3, 1983 Administrative Directive that provides that when a complaint is issued in the municipal court and the judge or administrator believes the factual situation also involves an indictable offense, the matter should be referred to the prosecutor. Seeliq, 180 N.J. 234.

In Seeliq, a motorist collided with a disabled vehicle, killing two. Id. at 237-38. The motorist was charged with two counts of aggravated manslaughter, and death by auto. He was arraigned and released on bail. Police thereafter issued three summonses for motor vehicle violations arising from the accident. Id. at 238. With the criminal charges pending, the motorist appeared in municipal court and entered a guilty plea to the motor

10

vehicle violations.  Although the judge asked if anyone was injured in the accident, he did not follow up when the motorist's counsel responded affirmatively.  Id. at 239.  The entry of the pleas raised "double jeopardy issues in connection with prosecution on the charged indictable offenses."  Id. at 240.  The State's motion to vacate the guilty pleas because of deficiencies in the municipal court proceeding was granted.  Id. at 241.

After considering these decisions, Judge Deitch held that the purpose of N.J.S.A. 2B:12-17.2(a) is to prevent defendants from using the holding in Dively to preclude criminal prosecution by resolving traffic violations in municipal court before resolution of indictable offenses arising from a traffic accident.  The judge also held that the "stated goal of the statute is to provide for the disposition of these matters in one court and avoid the municipal and Superior Court working at odds with each other."

The trial court found that defendant was no longer in danger of being exposed to liability in two courts, given the State's declaration that it has no intention of prosecuting her on criminal charges arising from the July 12, 2012 accident.  In addition, the court found that defendant was in much the same position as the defendant in Seelig, seeking to use double jeopardy precedents to avoid penalties for her actions.  Were her guilty plea to be vacated, defendant would not face criminal charges, and the State

11

would have the difficult task of proving at a new trial motor vehicle infractions alleged to have taken place six years prior.

The trial court also found that defendant's arguments failed under the doctrine of judicial estoppel. Under the doctrine, a party is barred "from arguing a position inconsistent with one previously asserted" in a judicial proceeding. State v. Gonzalez, 142 N.J. 618, 632 (1995) (quotations and citations omitted). "To be estopped a party must have convinced the court to accept its position in the earlier litigation," Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606-07 (App. Div. 2000) (quotations omitted), and "a party's inconsistent behavior will otherwise result in a miscarriage of justice," State v. Jenkins, 178 N.J. 347, 359 (2004) (quotations and citations omitted).

The trial court noted that at the plea allocution defendant's counsel advised the municipal court that there appeared to be no serious injury. This representation was accepted by the court, and benefitted defendant because the municipal court did not stay the matter to permit an investigation by the prosecutor's office into possible criminal charges against defendant. The trial court also noted that the municipal court judge advised defendant that if there had been serious bodily injury in the accident, the matter

12

would be in Superior Court. On June 9, 2017, Judge Deitch entered an Order denying defendant's application.

This appeal followed. On appeal, defendant raises the following argument:

> THE TRIAL COURT ERRED IN ITS INTERPRETATION AND APPLICATION OF N.J.S.A. 2B:12-17.2

Having reviewed the record in light of defendant's arguments and the law, we conclude that defendant's arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons expressed by Judge Deitch in his thorough and well-reasoned written decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4541-16T3